GLENN HAROLD,

        Petitioner,

v.                                                                                              Case No. 3:16-cv-888-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Glenn Harold, an inmate of the Florida penal system, initiated this action on June 30, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1), with an attached memorandum in support of the Petition (Memorandum; Doc. 2). In the Petition, Harold challenges a 2009 state court (Duval County, Florida) judgment of conviction for aggravated battery with a firearm and possession of a firearm by a convicted felon. Harold raises four grounds for relief. See Petition at 5-10.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Resp.; Doc. 11) with exhibits (Resp. Ex.). Harold submitted a brief in reply on July 4, 2017. See Reply to Respondents' Show Cause Answer (Reply; Doc. 12). This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On April 25, 2008, the State of Florida (State) charged Harold by way of an amended Information with attempted second-degree murder (count one), possession of a firearm by a convicted felon (count two), and driving while license suspended or revoked – felony habitual offender (count three). Resp. Ex. 1 at 51. On June 18, 2009, Harold, through counsel, filed a motion to sever count one from the remaining counts. Id. at 85-86. The circuit court granted the motion to sever on the same day. Id. at 84. Harold proceeded to a jury trial on count one, at the conclusion of which the jury found him guilty of the lesser-included offense of aggravated battery with a deadly weapon, with a specific finding that Harold discharged a firearm causing great bodily harm. Id. at 97-98. On July 13, 2009, Harold entered a negotiated plea of guilty to count two in exchange for the State entering a nolle prosequi as to count three. Resp. Ex. 2 at 199-200. Pursuant to the plea agreement, the circuit court sentenced Harold to a term of incarceration of five years in prison with a three-year minimum mandatory as to count two. Id. at 199, 205-06, 254. The circuit court further sentenced Harold to a term of incarceration of twenty-five years in prison with a twenty-five-year minimum mandatory as to count one and ordered both sentences to run concurrently. Id. at 204, 206, 247, 254.

Harold appealed the judgment of conviction and sentences to Florida's First District Court of Appeal (First DCA). Id. at 217. Harold, with the assistance of counsel, raised the following claims in his initial brief: the circuit court abused its discretion when it denied Harold's request for an additional peremptory strike as to juror Cuevas (issue one); the cumulative effect of the prosecutor's prejudicial comments during closing argument constituted fundamental error (issue two); and the circuit court's failure to give the

complete jury instruction for the justifiable use of deadly force constituted reversible error (issue three). Resp. Ex. 5 at 17-49. The State filed an answer brief. Resp. Ex. 6. On October 20, 2010, the First DCA per curiam affirmed the judgment and sentences without a written opinion, and it issued the Mandate on November 5, 2010. Resp. Ex. 8.

On October 28, 2011, Harold filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. 9 at 1-26. In his Rule 3.850 Motion Harold alleged his trial counsel was ineffective because he: failed to interview and call Doctor Steven Porter as a witness (ground one); failed to properly object to the jury instruction for the justifiable use of deadly force (ground two); failed to object to improper prosecutorial comments during closing argument (ground three); inadequately argued a motion for judgment of acquittal (ground four); failed to object to an improper jury instruction (ground five); failed to use a peremptory challenge on juror Brandis Cuevas (ground six); failed to call a ballistics expert to refute the victim's testimony (ground seven); failed to obtain surveillance footage from the scene of the crime (ground eight); and failed to demonstrate to the jury that his fist caused the injury to the victim's chin (ground nine). Id.

On February 16, 2012, Harold filed an amended Rule 3.850 motion (Amended Rule 3.850 Motion), in which he raised the following claims: counsel failed to adequately question and use a peremptory challenge on juror Cuevas (ground one); counsel failed to object when the circuit court only allowed six peremptory challenges when Harold was entitled to ten (ground two); the circuit court abused its discretion in not removing juror Cuevas after a valid challenge (ground three); counsel failed to object to the reading of a partial jury instruction for self-defense (ground four); counsel failed to object to improper

prosecutorial comments (ground five); counsel failed to obtain exculpatory surveillance footage (ground six); and counsel failed to object to confusing jury instructions (ground seven). Id. at 27-43. On November 5, 2012, Harold subsequently filed an amendment to his Amended Rule 3.850 Motion, adding two additional claims: the State failed to prove corpus delicti for count one (ground eight); and the circuit court failed to use the proper standard for ruling on Harold's motion for judgment of acquittal (ground nine). Id. at 44-54.

On August 30, 2013, Harold filed another amended Rule 3.850 motion (Second Amended Rule 3.850 Motion). Id. at 55-92. Harold raised the following claims in his Second Amended Rule 3.850 Motion: counsel failed to properly investigate and ultimately use a peremptory challenge on juror Cuevas (ground one); counsel failed to object when the circuit court only allowed six peremptory challenges when Harold was entitled to ten (ground two); the circuit court abused its discretion in not removing juror Cuevas after a valid challenge (ground three); counsel failed to object to the reading of a partial jury instruction for self-defense (ground four); counsel failed to object to improper prosecutorial comments (ground five); the State failed to prove corpus delicti for count one (ground six); the circuit court failed to use the proper standard for ruling on Harold's motion for judgment of acquittal (ground seven); and counsel failed to file a "Stand Your Ground" motion (ground eight). Id.

On May 29, 2014, Harold again filed an amended Rule 3.850 Motion (Third Amended Rule 3.850 Motion). Id. at 93-136. In his Third Amended Rule 3.850 Motion, Harold raised the same claims as he did in his Second Amended Rule 3.850 Motion and added a ninth ground for relief: counsel failed to properly convey a plea offer (ground

nine). Id. On November 4, 2014, Harold filed another amended Rule 3.850 Motion (Fourth Amended Rule 3.850 Motion), in which he realleged all the claims raised in Harold's Third Amended Rule 3.850 Motion. Id. at 137-82.

On February 4, 2016, the circuit court denied all of the grounds raised in Harold's Rule 3.850 Motions. Resp. Ex. 10 at 1-33. Harold appealed, arguing the circuit court erred in denying his Rule 3.850 Motions without an evidentiary hearing. Resp. Ex. 11. The State did not file an answer brief. Resp. Ex. 12. On May 27, 2016, the First DCA per curiam affirmed the circuit court's denial of Harold's Rule 3.850 Motions without a written opinion, and it issued the Mandate on June 22, 2016. Resp. Ex. 13.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

before the Court. Because the Court can "adequately assess [Harold's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." <u>Henry v. Warden, Ga. Diag. Prison</u>, 750 F.2d 1226, 1230 (11th Cir. 2014); <u>see also</u> <u>Carrier</u>, 477 U.S. at 488; <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. <u>Carrier</u>, 477 U.S. at 488; <u>see also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." <u>Henderson</u>, 353 F.3d at 897 (citing <u>Edwards</u>, 529 U.S. at 446 and <u>Carrier</u>, 477 U.S. at 478).

---

6 <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Harold alleges that his trial counsel was ineffective because he failed to call Doctor Steven Potter as a witness. Petition at 5. According to Harold, Dr. Potter would have

testified that the victim did not suffer great bodily harm, which would have negated that element of the aggravated battery charge. Id.

Harold raised a similar claim in state court as ground one of his Rule 3.850 Motion. Resp. Ex. 9 at 7-8. In denying this claim, the circuit court explained:

> In its Response, the State asserts that it properly disclosed Dr. Potter as a witness during discovery. The State also asserts that it provided eighteen pages of medical records to Defendant during discovery. The State argues that any decision by Defendant's counsel not to call Dr. Potter is based upon trial counsel's assessment of the medical reports and counsel's determination that Dr. Potter would not benefit Defendant at trial. The Court cannot summarily deny Defendant's claim in Ground One based solely on a strategic decision by counsel without affording Defendant an evidentiary hearing. However, a hearing is not necessary to address this issue because uncontroverted testimony from additional witnesses corroborate the victim's testimony and refute Defendant's allegation as detailed below.

> Assuming *arguendo*, that Dr. Potter's testimony would contradict the victim's own description of his injuries Defendant still cannot show he suffered prejudice. Even if counsel had called Dr. Potter to refute the victim's testimony of a broken bone and permanent injury, the jury could still find Defendant caused an injury to the victim resulting in great bodily harm. Officer Baughan testified that she observed the victim's wound and a considerable amount of blood at the scene. She further testified that she observed a blood trail extending over one-hundred feet from the victim. Officer Ardizzoni also testified that he observed the victim's gunshot wound and a considerable amount of blood at the scene. Officer Smith testified that she observed a large pool of blood at the scene. Officer Smith also identified photographs in evidence as those that she took at the scene depicting a lengthy blood trail. Furthermore, the State presented uncontroverted testimony that emergency responders transported the victim via ambulance to the hospital for emergency treatment of a gunshot wound. The Court finds that these facts alone refute Defendant's allegation that the victim's injury was trivial or superficial. Rather, the evidence presented at trial supports the jury's verdict that Defendant discharged a firearm causing great bodily harm. Moreover, it

defies logic and common sense to argue a gunshot victim requiring emergency transport and treatment did not suffer great bodily harm.

Furthermore, Aggravated Battery does not require that the jury find a defendant caused great bodily harm. See § 784.045(1)(a)(1)-(2), Fla. Stat. (2007). Rather, as detailed in the Court's instructions to the jury, the jury could have convicted Defendant of Aggravated Battery based solely on his use of a deadly weapon. The victim, as well as Defendant himself, provided uncontroverted testimony that Defendant discharged a firearm causing the victim's injury. Accordingly, Defendant cannot show that there is a reasonable probability the outcome of his trial would have been different but for counsel's decision not to call Dr. Potter. Defendant is not entitled to relief on Ground One.

Resp. Ex. 10 at 5-8 (record citations omitted). The First DCA per curiam affirmed the denial of this claim. Resp. Ex. 13.

To the extent that the First DCA decided this claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Harold is not entitled to relief on the basis of this claim.

Even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground One is without merit because Harold cannot demonstrate

---

[7] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

prejudice. Under Florida law, an aggravated battery occurs when one of two things occurs: (1) the defendant commits a battery while intentionally or knowingly causing great bodily harm, permanent disability, or permanent disfigurement; or (2) the defendant uses a deadly weapon. § 784.045(1)(a), Fla. Stat.; see also Stoute v. State, 915 So. 2d 1245, 1248 (Fla. 4th DCA 2005) (quoting § 784.045(1)(a), Fla. Stat.) ("Aggravated battery is an alternative conduct crime. Pursuant to the statute, the State can either prove the defendant '[i]ntentionally or knowingly cause[d] great bodily harm, permanent disability, or permanent disfigurement' or '[u]se[d] a deadly weapon' when he committed the battery."). "A firearm is, by definition, a deadly weapon because it is designed to expel a projectile by the action of an explosive which is likely to cause death or great bodily injury." State v. Williams, 10 So. 3d 1172, 1174 (Fla. 3d DCA 2009); see also Hosnedl v. State, 126 So. 3d 400 (Fla. 3d DCA 2013) (holding accidental discharge of a firearm is the use of deadly force as a matter of law).

The record reflects that count one of the Information alleged both discharge of a firearm and great bodily harm. Resp. Ex. 1 at 51. The evidence at trial demonstrated that Harold shot the victim in the leg with a nine-millimeter pistol. Resp. Ex. 3 at 131-35, 151-52. Notably, Harold admitted on the stand that he shot the victim in the leg, albeit contending that it was accidental. Id. at 300-01. The jury instructions the circuit court read on aggravated battery included both theories of aggravated battery. Resp. Ex. 1 at 127. Based on this record, even assuming Dr. Potter had been called and his testimony was favorable to Harold on this matter, the jury still would have been able to find Harold guilty of aggravated battery due to his use of a deadly weapon. See Stoute, 915 So. 2d at 1248; Williams, 10 So. 3d at 1174. Indeed, the jury made a specific factual finding that Harold

"discharged a firearm causing great bodily harm." Resp. Ex. 1 at 97-98. As such, Harold cannot demonstrate prejudice; therefore, his claim of ineffective assistance of counsel is without merit. Based on the above, the relief Harold seeks in Ground One is due to be denied.

**B. Ground Two**

In Ground Two, Harold contends that his trial counsel was ineffective because counsel failed to insure the justifiable use of deadly force jury instruction was complete and accurate. Petition at 7. Harold asserts that the jury instruction was incomplete and inaccurate because it failed to inform the jury that the justifiable use of force defense was available to convicted felons. Id. In his Memorandum, Harold notes that "[b]ecause the Court instructed the jury that justified use of force was available when the Defendant 'was not' engaged in unlawful activity, the self defense theory was nullified because at the time Harold engaged the victim he was a convicted felon in possession of a firearm." Memorandum at 8-9. However, Harold, citing Little v. State, 111 So. 3d 214 (Fla. 2d DCA 2013), argues that Florida Statutes section 776.012(1), provides for immunity regardless of whether Harold was engaged in an unlawful activity. Id. at 8.

Respondents contend that Harold failed to exhaust this claim. Response at 26-34. Although Harold raised a claim in state court challenging his attorney's performance regarding the justifiable use of deadly force instruction, Respondents assert that Harold never argued that counsel should have objected to the "unlawful activity" portion of the instruction. Id. at 26-27. Instead, Respondents aver that Harold's claim challenged the instruction because the circuit court excluded the portion of the instruction that stated deadly force was justified if Harold "believed it was necessary to defend against the

imminent commission of an aggravated battery upon himself." <u>Id.</u> at 27. In his Reply, Harold maintains that "[n]ot one time during any of his post-conviction Court proceeding[s] did Petitioner ever explain the flaw in the instruction, or what was missing from the instruction that rendered it harmful." Reply at 7. Harold notes that he "clarified the specific error in his initial brief on appeal from the denial of his rule 3.850 motion in the First District Court of Appeal arguing the instruction deprived Petitioner of the benefit of the Stand Your Ground Law." <u>Id.</u> According to Harold, given the broad manner in which he alleged this claim in his Rule 3.850 Motions, the state courts were given the opportunity to review this claim. <u>Id.</u>

Florida's standard jury instruction on the justifiable use of deadly force reads as follows: "A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent (1) imminent death or great bodily harm to him or another, or (2) the imminent commission of [an applicable felony] against himself or another." Fla. Std. Jury Instr. (Crim.) 3.6(f) (2009). The record reflects that the circuit court excluded the second alternative justification – to prevent the imminent commission of a felony against the accused. Resp. Ex. 4 at 370. It is the omission of the second alternative justification that Harold complained about in his Rule 3.850 Motions, specifically arguing that he shot the victim in order to prevent the imminent commission of an aggravated battery against himself. Resp. Ex. 9 at 8-10, 35-38, 69-73, 108-112, 153-57. Contrary to Harold's allegations in his Reply, he did explain in his Rule 3.850 Motions the specific "flaw in the instruction," and the alleged flaw he identified did not concern his status as a convicted felon in possession of a firearm. Although the instant claim relates to alleged ineffective assistance of counsel concerning the same instruction, the legal theory Harold claimed

for deficiency in his Rule 3.850 Motions is different than the legal theory he espouses in the instant Petition. As such, Harold failed to fairly present the nature of this claim in state court, and the claim is unexhausted. See Picard, 404 U.S. at 276 ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). Harold has failed to demonstrate cause and prejudice to overcome this procedural default and has likewise failed to present any evidence warranting a fundamental miscarriage of justice analysis. Therefore, relief on the claim in Ground Two is due to be denied as procedurally defaulted.

Even if this claim was not procedurally defaulted, Harold would not be entitled to federal habeas relief. The statute Harold relies on in support of this claim, Florida Statutes section 776.012(2), states in pertinent part that "[a] person is justified in using or threatening to use deadly force if he or she <u>reasonably believes</u> that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself." (emphasis added). At trial, Harold testified that he woke up that morning and observed from the balcony of his second-story apartment that someone was sitting inside his vehicle. Resp. Ex. 4 at 294-96. Upon seeing this, Harold told his girlfriend to call the police, at which point Harold armed himself and went downstairs to his car to investigate. <u>Id.</u> at 296-97. When Harold opened the car door, he saw the victim, a man who appeared to be sleeping inside Harold's car. <u>Id.</u> at 298. After receiving no response from the victim after instructing him to move from the vehicle, Harold punched the victim under the chin, which woke him. <u>Id.</u> The victim then got out of the car and Harold told him to sit there and

wait for the police to come. Id. at 299. According to Harold, the victim "reached for the gun," causing it to accidently discharge and hit the victim in the leg. Id. at 299-302. Notably, Harold specifically and repeatedly testified he never intended to shoot the victim. Id. at 301, 306, 319. Based on Harold's own testimony that the gun accidently discharged, Harold could not have established that he discharged the weapon because he "reasonably believed" that using deadly force was necessary to prevent imminent death or great bodily harm to himself. Discharging a firearm accidently does not entail formulating a belief, reasonable or otherwise, that deadly force is necessary. Accordingly, even if the jury were instructed to disregard Harold's status as a convicted felon possessing a firearm, his contention that he would not have been convicted is without merit. As such, the claim in Ground Two is due to be denied.

### C. Ground Three

Harold asserts that his trial counsel was ineffective because he failed to object to improper closing arguments that bolstered a State witness. Petition at 8. According to Harold, his attorney should have objected and moved for a mistrial when the prosecutor stated during closing arguments that the victim never lied and had no reason to lie. Id.

Harold raised a similar claim in his Rule 3.850 Motions. Resp. Ex. 9 at 11-12, 38-40, 73-76, 112-15, 158-60. The circuit court denied this claim, stating in pertinent part:

> Initially, the Court notes that Defendant's allegations take the State's comments out of context. Defendant alleges that the State improperly bolstered the victim's testimony. However, when taken in context, it is clear the State, during rebuttal argument, was merely refuting defense counsel's credibility challenge by stating the victim had no personal or financial incentive to lie. Defendant's counsel challenged the credibility of the victim in his own closing. Specifically, defense counsel indicated the victim was a convicted felon and had been charged with a crime in connection with the current

incident. Defense counsel then opined that the victim was motivated to lie in order to avoid more stringent charges in his own case. Taken in context, the State's purportedly improper comments were made in response to defense counsel's credibility challenge. As such, the comments were not improper and the trial court is unlikely to have sustained any objection. The victim provided uncontroverted testimony that he had no prior relationship to Defendant. The victim also testified that he had nothing to gain from testifying against Defendant.

In support of his contention, Defendant cites <u>Cisneros v. State</u>, 678 So. 2d 888 (Fla. 4th DCA). In <u>Cisneros</u>, the Fourth District Court of Appeal found that the State's closing argument improperly expressed counsel's personal opinion regarding the credibility of a key witness. Defendant's case is distinguishable from <u>Cisneros</u>. In that case, the Fourth District Court of Appeal specifically stated that the State's improper comments were prejudicial because it was "unquestionably clear" that the State's case "hinged" on credibility of the particular witness at issue. <u>Id.</u> at 890. In the instant case, unlike <u>Cisneros</u>, it is clear that the State's case did not "hinge" on the victim's credibility. Instead, the instant case is similar to <u>Gorby v. State</u>, 819 So. 2d 664, 684 (Fla. 2002) in which the Florida Supreme Court distinguished <u>Cisneros</u>. In <u>Gorby</u>, the defendant alleged ineffective assistance of counsel for failing to challenge the purported bolstering of a State witness during the State's closing. <u>Id.</u> at 684. The Court held that any failure by counsel to challenge the prosecutor's comments was harmless because [the] State's case did not hinge on the testimony of the specific witness. <u>Id.</u> In the instant case, the State, as detailed *supra*, presented testimony from several witnesses along with physical evidence corroborating the victim's testimony.

Assuming, *arguendo*, the Court sustained an objection by counsel and the jury found the victim was not credible, the jury could still reach their verdict based upon the remaining evidence. Similar to the holding in <u>Gorby</u>, the Court finds that the purportedly improper comments do not undermine confidence in the jury's verdict and therefore Defendant cannot show prejudice. Defendant is not entitled to relief on Ground Three.

Resp. Ex. 10 at 10-12 (record citations omitted). The First DCA per curiam affirmed the denial of this claim. Resp. Ex. 13.

To the extent that the First DCA decided this claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Harold is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim is without merit. During closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir.1984)). Additionally,

> A prosecutor commits improper vouching by "arguing credibility based ... on evidence not before the jury," United States v. Eyster, 948 F.2d 1196, 1207 (11th Cir. 1991) (quotation omitted), or by placing "the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity," United States v. Epps, 613 F.3d 1093, 1100 (11th Cir. 2010) (quotation omitted).

United States v. Gonzalez, 834 F.3d 1206, 1226 (11th Cir. 2016).

---

[8] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

The record reflects that in the rebuttal portion of his closing arguments the prosecutor stated:

> Talk about credibility a little bit because the Judge will give you factors in determining credibility. . . .
>
> . . . .
>
> Does the witness have an interest in how the case should be decided? And this one certainly go back there and think about because Maurice Johnson doesn't know Glenn Harold, doesn't know Tennel Stokes [Harold's live-in girlfriend], doesn't know anyone here. He comes down out of his day and give that testimony [sic]. He gets nothing from it. He has no reason to lie about any of it, especially not two years after the fact. Why? What interest does he have in this? None. This isn't a civil suit where he can make money. He's home and this is over for him.
>
> . . . .
>
> Lastly, did the witness at some other time make a statement inconsistent with what he said in court? Mr. Hernandez talked about Mr. Johnson not telling the police about the car that looked the same or not giving the encounter of how the first gunshot went off and certainly Mr. Johnson was, to be fair, disoriented from the evening before, hung over as he told you.
>
> He'd just been hit in the fact causing – he had to get stitches. He's been shot in the leg. He's been to Shands Hospital so I think, ladies and gentlemen of the jury, it is reasonable and pardonable if he didn't give a full two-hour account of everything that happened, especially since patrol officers at the scene were clearly still intent and focused on getting the gun which they believed still to be on the premises.
>
> It wasn't an in-depth interview. You heard that. It was, hey, what happened? A quick version. He never lied and said something that happened that didn't. However, Glenn Harold did over and over and over and over and over and over he lied. He sat up on the stand and told you that was a lie. That was a lie. He looked at each and everyone of you and said that was a lie.

Resp. Ex. 4 at 361-63 (emphasis added). When read in their proper context, these comments do not impermissibly vouch for the credibility of the witness. Instead, while talking about witness credibility in the context of the court's instruction on determining credibility, the prosecutor made a comment that there was no evidence introduced at trial to suggest the victim had a motive to lie. Next, the prosecutor noted that nothing the victim told police later turned out to be a lie, unlike Harold who provided three varying stories to police that he later admitted on the stand were lies. This is an example of a prosecutor drawing reasonable inferences and conclusions from the evidence. Accordingly, any objection to these comments would have been meritless. Counsel cannot be deemed deficient for failing to raise a meritless objection. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Therefore, relief as to the claim in Ground Three is due to be denied.

### D. Ground Four

Lastly, in Ground Four, Harold contends that his trial counsel was ineffective because he failed to strike juror Cuevas with a peremptory challenge. Petition at 10. According to Harold, Cuevas should have been stricken as a juror because Cuevas was convicted of drug charges and was on probation during the trial. Id. In Harold's Memorandum, he asserts that Cuevas was statutorily ineligible to serve as a juror due to her prior felony conviction. Memorandum at 12-13. Harold also alleges that his counsel

failed to preserve for appeal the circuit court's denial of his request for an additional peremptory strike. Petition at 10.

Respondents contend that this claim is unexhausted. Response at 43-48. Although Harold raised a claim that trial counsel was ineffective for failing to strike Cuevas in his Rule 3.850 Motions, Respondents contend that Harold never argued Cuevas should have been stricken because she was statutorily ineligible to serve as a juror due to her felony conviction. Response at 43-45. In his Reply, Harold argues that Respondents are creating distinctions in his arguments that "has no effect on the result." Reply at 11. According to Harold, the Florida Supreme Court has "held that jurors who are statutorily disqualified convicted felons that serve on a criminal jury must still be proven to be actually bias[ed]." Id. at 11-12. Harold maintains that his core argument is the same, that Cuevas was actually biased and that "trial counsel's voir dire was insufficient to fret out the internal bias juror Cuevas possessed in favor of the trial judge in the Petitioner's criminal trial." Id. at 12.

Courts are required to liberally construe pro se pleadings. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Additionally, the Eleventh Circuit has explained:

> the Supreme Court has instructed us that if "the substance of a federal habeas corpus claim [was] first ... presented to the state courts," then the claim is exhausted, "despite variations in the ... factual allegations urged in its support." Picard, 404 U.S. at 277–78, 92 S.Ct. 509.[] Thus, "courts should exercise flexibility in determining whether defendants have met [the exhaustion] requirement." Cummings, 862 F.2d at 1507;[9] see also Henry, 197 F.3d at 1367 ("The exact presentation of the claims in the state and federal courts may vary some.").[10]

---

[9] Cummings v. Dugger, 862 F.2d 1504 (11th Cir. 1989).
[10] Henry v. Dep't of Corr., 197 F.3d 1361 (11th Cir. 1999).

Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1295 (11th Cir. 2012). The record reflects that Harold raised a similar claim in his initial Rule 3.850 Motion as ground six. Resp. Ex. 9 at 17-19. There, Harold alleged that counsel was ineffective for failing to use a peremptory challenge to strike Cuevas based on the fact that she had a prior felony conviction. Id. at 18. Harold contended that Cuevas was biased because she "had recently received an advantageous plea deal and was currently on probation," which he claimed gave Cuevas "every reason to curry favor with the State and with the Court." Id. In his later Rule 3.850 Motions, Harold made similar arguments. Id. at 29-31, 59-62, 97-100, 142-44. Having compared the allegations in the instant Petition with those in Harold's Rule 3.850 Motions, the Court finds that Harold has exhausted this claim. See Erickson, 551 U.S. at 94; Pope, 680 F.3d at 1295. Both in the Petition and in state court, Harold argued his counsel was ineffective for failing to use a peremptory challenge on Cuevas due to perceived bias arising from Cuevas' beneficial plea deal. Accordingly, the claim is exhausted and due to be considered applying AEDPA's deferential standard.

In denying this claim, the circuit court stated in pertinent part:

> The record indicates Juror Cuevas served as a juror in Defendant's case. However, [t]he record also refutes Defendant's allegations. During *voir dire*, Juror Cuevas disclosed her conviction to the Court and indicated the presiding judge had also presided in her case. When asked whether her experiences with the Court would affect her ability to be impartial, Juror Cuevas answered in the negative. When asked whether anything about her prior experience as a defendant would make her uncomfortable, Juror Cuevas again answered in the negative. During the exercise of challenges, the Court specifically stated Juror Cuevas was part of the panel and that the judge had no recollection of her as a defendant. Defendant did not state any objections to juror Cuevas being included on the panel.

Assuming, *arguendo*, that counsel was deficient for failing to question Juror Cuevas in detail during *voir dire*, the Court remedied any remaining issue by allowing counsel to question Juror Cuevas during trial. Essentially, the Court permitted counsel to conduct a second *voir dire* specifically directed at Juror Cuevas to determine whether Juror Cuevas could be impartial. During this second *voir dire*, counsel was not deficient. Counsel conferred with Defendant and requested the Court grant Defendant an additional peremptory challenge and strike Juror Cuevas from the panel. The Court denied counsel's request but agreed to allow counsel the opportunity to question Juror Cuevas and establish ground to strike her for cause. Counsel questioned Juror Cuevas regarding her experience as a defendant, her probation and whether anything affected her ability to be impartial. The colloquy between counsel and Juror Cuevas refutes Defendant's claim that Juror Cuevas was biased either by her lenient sentence or her probation. . . .

Following additional oral argument by counsel, the Court specifically found that Juror Cuevas was in no way biased. Accordingly, the record refutes Defendant's allegation that a biased juror served on his panel. Defendant is not entitled to relief on Ground Six because Defendant is unable to demonstrate prejudice and because the record refutes Defendant's claim that additional questioning by counsel would reveal Juror Cuevas was biased.

Resp. Ex. 10 at 16-20 (record citations omitted). The First DCA per curiam affirmed the denial of this claim. Resp. Ex. 13.

To the extent that the First DCA decided this claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established

---

[11] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Harold is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim in Ground Four is meritless. The Eleventh Circuit has explained:

> . . . To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." United States v. Chandler, 996 F.2d 1073, 1102 (11th Cir.1993) (emphasis added); see also Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). The burden is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). Moreover, the U.S. Supreme Court has upheld a trial court's seating of a juror even where the juror gave conflicting or ambiguous answers during voir dire about his ability to be impartial. See, e.g., Patton v. Yount, 467 U.S. 1025, 1038–40, 104 S.Ct. 2885, 2892–93, 81 L.Ed.2d 847 (1984); Murphy v. Florida, 421 U.S. 794, 801–03, 95 S.Ct. 2031, 2037–38, 44 L.Ed.2d 589 (1975).

> Under Florida law, the test at trial "for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). The trial court must grant a party's motion to strike a prospective juror for cause if there is "any reasonable doubt" as to the juror's impartiality. Singer v. State, 109 So.2d 7, 23 (Fla.1959).

> In the post-conviction context, however, Florida has an actual bias requirement. See Carratelli v. State, 961 So.2d 312, 323 (Fla.2007). "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." Id. at 324 (emphasis added). To meet the actual bias standard, "the defendant must demonstrate that the juror in question was not impartial—i.e.,

that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." Id.

Fennell v. Sec'y, Fla. Dep't of Corr., 582 F. App'x 828, 832 (11th Cir. 2014). Under Florida law, a defendant is not entitled to new trial when a jury includes a convicted felon whose civil rights had not been restored absent a showing of actual bias against the defendant. Boyd v. State, 200 So. 3d 685, 697 (Fla. 2015).

Harold has failed to provide any legally sufficient evidence demonstrating that Cuevas was actually biased against him. In fact, the record reflects otherwise. During Harold's trial the circuit court informed the parties that Cuevas had been arrested for trafficking but was ultimately charged with and pled guilty to obtaining a controlled substance by fraud. Resp. Ex. 3 at 180-81. Defense counsel then moved to strike Cuevas and requested the alternate juror become the primary juror. Id. at 181-83, 185, 192. The circuit court denied the request noting that the defense had used all of its peremptory challenges but allowed the defense to question Cuevas on this issue to determine if a cause challenge would be appropriate. Id. at 181-82, 192. When asked whether she held any bias, positive or negative, towards the State or the Court, Cuevas replied in the negative. Id. at 187-93. Cuevas also stated she would be able to listen to the facts and follow the law. Id. at 188-89. The circuit court concluded that Cuevas was unbiased and could serve on the jury. Id. at 193. Harold has not alleged any information to rebut Cuevas' statements during this voir dire exchange; therefore, the record refutes Harold's claim that Cuevas was actually biased against him. Accordingly, as Harold cannot demonstrate actual bias, his claim of ineffectiveness is without merit. See Fennell, 582 F. App'x at 832; Boyd, 200 So. 3d at 697.

To the extent Harold argues counsel was ineffective for failing to preserve for appeal the circuit court's denial of an additional peremptory challenge, this claim is likewise without merit. Harold's claim of prejudice revolves entirely around the failure to preserve this issue for appeal. However, "there is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice on appeal rather than at trial in a case [where an issue was raised but not properly preserved]." Carratelli v. Stepp, 382 F. App'x 829, 832 (11th Cir. 2010). Accordingly, Harold is not entitled to federal habeas relief on this claim. See id. Moreover, Harold's reliance on Davis v. Crosby, 341 F.3d 1310 (11th Cir. 2003) is misplaced. In Davis, the Eleventh Circuit carved out a narrow exception for cases "involving 'peculiar circumstances' where the only effect of trial counsel's error was on the appeal," which is different from "the usual case where counsel had failed to bring an issue to the attention of the trial court at all." Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Davis, 341 F.3d 1316). The record reflects that Harold's attorney did not lodge an objection to Cuevas being seated nor did he object to accepting the jury as selected prior to the jury being sworn in and seated. Resp. Ex. 3 at 31-32, 85-108. As such, counsel's alleged error is not one of the "peculiar circumstances" described in Davis. See Purvis, 451 F.3d at 739. Accordingly, the Petition as it relates to the claim raised in Ground Four is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Harold seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Harold "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Harold appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not

warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of February, 2019.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:    Glen Harold, #464610
       Bryan Jordan, Esq.